# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MAURICE J. SINKFIELD,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:22CV00033 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Maurice J. Sinkfield, Pro Se Plaintiff; Justin M. Lugar, Assistant United States Attorney,* OFFICE OF THE UNITED STATES ATTORNEY, *Roanoke, Virginia, for Defendant.*

The plaintiff, Maurice J. Sinkfield, a federal inmate proceeding pro se, filed this civil rights action against the United States under the Federal Tort Claims Act (FTCA). He alleges that officials at his prison were negligent by not providing him with accommodations for his mobility problems, such as a ladder to access his assigned top bunk, and by not providing emergency care for injuries he received after a fall while attempting to access his top bunk. After review of the record, I conclude that the United States' Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure must be granted as to any claim regarding mobility accommodations, but that Sinkfield's FTCA medical malpractice claims may go forward at this time.

I. BACKGROUND.

Sinkfield alleges that he requested assignment to a bottom bunk at USP Lee and that he informed medical staff that he needed a bottom bunk because of severe knee pain from past surgery on his left knee and arthritis in both knees.[1]  On October 21, 2020, Sinkfield was still assigned to a top bunk.  The bed frame did not include a ladder to assist him in accessing his assigned bunk.  Accordingly, Sinkfield stood on a plastic chair in an attempt to climb onto his top bunk that was approximately five feet and five inches high.  The chair "slipped out from under him," he "fell, hit the concrete cell floor, but his right leg was caught and on the way down his right tibial plateau fractured, his right knee dislocated, and his right lateral meniscus tore at the periphery."  Compl. ¶¶ 7, 8, ECF No. 1.  Sinkfield alleges that he was in "excruciating" pain after the fall, which occurred about 6:00 p.m.  *Id.* ¶ 8.  Correctional officers tried unsuccessfully to escort him to the medical unit.

Hours later, several officers came to Sinkfield's cell and allegedly threatened to restrain and beat him if he objected to having a medical officer examine him in his cell.  About two hours later, at about 11:50 p.m. on October 21, 2020, Spencer Bowman, RN, came to the cell and examined Sinkfield's right leg.  Bowman allegedly "knowingly and intentionally ignored [Sinkfield's] clearly visible, serious

---

[1] In a later submission, Resp. Opp'n 5–6, ECF No. 15, Sinkfield states that during his intake medical screening at USP Lee on August 5, 2019, he informed the interviewer of these issues.

physical right leg injuries and [his] legitimate need of emergency medical assistance at a hospital." *Id.* ¶ 13. Sinkfield alleges that Bowman "was not truthful" when he noted observing no swelling or "obvious deformity" in Sinkfield's right knee and that the inmate could flex the knee "with slight distress observed." *Id.* ¶ 14. Bowman provided Sinkfield with an ace wrap and told him he could have ice for the injured knee. Sinkfield switched bunks with his cell mate, despite a chance he would be disciplined for doing so, and allegedly suffered in "great excruciating pains and agony that never stopped." *Id.* ¶ 17.

On October 22, 2020, at 7:12 a.m., medical officer Charles Bray examined Sinkfield's knee. Bray noted "positive tenderness with flexion, extension, internal and external rotation of the [right] knee, swelling noted to the knee." *Id.* ¶ 18.

At 12:33 p.m. on October 22, 2020, Dr. Timothy York came to Sinkfield's cell and examined his right leg. Dr. York had officers transport Sinkfield to an outside orthopedic center (Watauga Orthopaedics) for an X ray and a physical examination of his right leg by a specialist. The noted results of that exam included "swelling of the knee and obvious deformity." *Id.* ¶ 21. The orthopedic doctor there noted a need for emergency surgery on Sinkfield's right knee. Nurses applied a splint, and staff transported Sinkfield to Bristol Regional Medical Center in Bristol, Tennessee, where he underwent surgery on one knee. The providers there determined that definitive surgical repair would require Sinkfield to be transferred

to Johnson City Medical Center (JCMC) in Johnson City, Tennessee, for "orthotrauma evaluation." *Id.* ¶ 24. On October 30, 2020, a surgeon at JCMC performed additional surgery on Sinkfield's right knee. Pre-operative diagnoses noted two fractures and a torn meniscus. Sinkfield remained in the hospital until November 10, 2020. A week later, he was transferred from USP Lee to Lexington Federal Medical Center in Kentucky for physical therapy. Medical providers have warned Sinkfield that he may need further surgical procedures in the future and that the knee may always cause him pain.

Sinkfield filed this civil action in January 2022 seeking money damages against the United States. The government's Motion to Dismiss argues that the action should be dismissed Under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction under the discretionary function doctrine. Sinkfield has responded, making the Motion to Dismiss ripe for decision.

## II.  DISCUSSION.

### A.  Constitutional Claims not Cognizable.

The United States enjoys sovereign immunity from suit unless Congress has explicitly waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of that immunity, allowing the United States to be sued

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the

>   Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). Sinkfield contends that he was kept in "unsafe living conditions at U.S.P. Lee," denied "emergency medical assistance on October 21, 2020," and left in "excruciating ongoing pains." Compl. ¶ 31, ECF No. 1.

Sinkfield's Complaint also asserts that he was deprived of his constitutional rights related to these same events. Sinkfield states that under the Eighth Amendment, the United States "is responsible for ensuring the safety and well-being of prisoners in its federal prisons," and that the unsafe conditions and denial of emergency medical care at USP Lee on October 21, 2020, "violated [his] Eighth Amendment right to be free from cruel and unusual punishment." *Id.* ¶¶ 4, 31.

Under 42 U.S.C. § 1983, an aggrieved party can file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and later cases, the Supreme Court recognized a similar, but limited, implied cause of action for a litigant to sue federal officials in their individual capacities for actions taken under color of federal law in violation of the litigant's constitutional rights. For example, the Court has permitted a lawsuit against federal officials under *Bivens*

for damages for inadequate medical treatment of a federal prisoner that violated the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14 (1980).

Sinkfield's Complaint does not sue any federal official for violating his constitutional rights. He sues only the United States and expressly relies on the FTCA to do so. Importantly, the *Bivens* "doctrine does not override bedrock principles of sovereign immunity so as to permit suits against the United States" for alleged constitutional violations allegedly committed by federal officials. *McCloskey v. Mueller*, 446 F.3d 262, 272 (1st Cir. 2006). Therefore, I conclude that the United States, retains sovereign immunity against such constitutional claims and is not a proper defendant to a claim under *Bivens* and the Eighth Amendment. I will thus summarily dismiss any Eighth Amendment claims under *Bivens*, pursuant to 28 U.S.C. § 1915A(b)(2),[2] because the United States is immune from suit on such claims.[3]

---

[2] Under § 1915A(b)(2), in a lawsuit where "a prisoner seeks redress from a governmental entity," the court may summarily dismiss the claim if it "seeks monetary relief from a defendant who is immune from such relief."

[3] Sinkfield mentions *Bivens* only in his response to the defendant's motion. A plaintiff cannot use a response to a defendant's dispositive motion to amend the complaint that the defendant's motion challenges. *Cloaninger ex rel. Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that plaintiff may not amend complaint through argument in brief opposing summary judgment); *James v. Bailey*, No. 3:15CV519, 2017 WL 193494, at *7 n.7 (E.D. Va. Jan. 17, 2017), *aff'd*, 694 F. App'x 146 (4th Cir. 2017) (unpublished) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

B.  The Defendant's Motion.

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), challenges the court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

> Pursuant to Rule 12(b)(1), a defendant may challenge federal subject matter jurisdiction in two ways. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may attack the face of the complaint and contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). . . . Second, a defendant may attack subject-matter jurisdiction as a matter of fact and argue "that the jurisdictional allegations of the complaint [are] not true." *Id.* Under those circumstances, . . . "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for

---

While Sinkfield is pro se, he is an experienced litigator, having acquired three strikes under 28 U.S.C. § 1915(g) (requiring prepayment of filing costs by inmate litigant who has had three previous cases or appeals dismissed as frivolous, malicious, or for failure to state a claim, absent showing of "imminent danger of serious physical injury"). *Sinkfield v. United States*, No. 7:20CV00149, 2021 WL 789860, at *1 (W.D. Va. Mar. 1, 2021), *appeal dismissed*, No. 21-6385, 2021 WL 4203690 (4th Cir. Apr. 19, 2021) (holding that Sinkfield has three strikes under § 1915(g), including *Sinkfield v. Grady Cty. Law Enf't Ctr.*, No. 5:19-cv-00597 (W.D. Okla. Dec. 4, 2019); *Sinkfield v. U.S. Marshals Serv.*, No. 1:19CV00392, 2019 WL 4991644 (N.D. Ohio Oct. 7, 2019); and *Sinkfield v. Murphy*, No. 1:15-cv-00453 (N.D. Ohio Aug. 3, 2015). Moreover in his 2020 case, the court expressly notified Sinkfield that a *Bivens* claim could only be brought against federal officials for actions each of them had taken personally in violation of his constitutional rights. Order 2, ECF No. 15, *Sinkfield*, No. 7:20CV00149. Therefore, I decline to permit Sinkfield leave to amend his Complaint to raise *Bivens* claims or to name individuals subject to being sued under *Bivens*.

summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

*Wells v. Artrip*, No. 1:16CV00041, 2017 WL 1788385, at *2 (W.D. Va. May 3, 2017).

The United States construes Sinkfield's FTCA claim as asserting that Federal Bureau of Prisons (BOP) official decisions and/or policy were defective for failing to provide him with a ladder to access his top bunk.[4] USP Lee Safety Administrator Cantrell states that his job duties include development of "safety [and] environmental health" programs, training staff in these areas, and maintaining institutional security. Mem. Supp. Mot. Dism. Cantrell Decl. ¶ 3, ECF No. 11-1. Cantrell testifies that he has "not been asked by any inmate for placement of a ladder in their cell or to be moved into a cell with a ladder," and that there is no BOP policy governing the use of ladders on bunk beds in BOP facilities, such as USP Lee. *Id.* at ¶¶ 7–8. BOP administrators leave decisions about such matters to the independent

---

[4] I note that on the excerpt from a tort claim form attached to the Complaint as Exhibit B, Sinkfield states:

> I was forced by U.S.P. Lee staff to use a plastic chair to climb on my assigned bunk bed that was over 5 feet high. There was no ladder. The plastic chair I was using slipped out from under me and I hit the concre[te] floor, but my right leg was caught on the way down which then caused my injuries. The living condition was unsafe. . . .

Compl. Ex. B, at 3, ECF No. 1-1.

judgment of officials at each BOP prison facility.[5] Cantrell states that a USP Lee inmate with concern about his ability to reach the top bunk safely can inform prison staff of his difficulties. The medical staff can review the inmate's medical conditions and decide whether they warrant a "bottom bunk pass or another accommodation that may or may not require the installation of a ladder." *Id.* at ¶ 9. A decision about the need for an accommodation and the type of accommodation to provide "rests within the discretion of USP Lee staff on a case-by-case basis." *Id.*

The United States argues that the jurisdictional facts related to Sinkfield's claim regarding bunk ladders are not true, since the BOP and USP Lee have no policy requiring bunk ladders. Thus, the United States contends that the court can consider evidence outside the pleadings to address the Motion to Dismiss, without converting it to a summary judgment motion. *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768. Cantrell's undisputed testimony is that BOP security officials have discretion regarding decisions about inmates' bunk accommodations, including ladders. Therefore, the United States asserts that Sinkfield's ladder claim is barred under the discretionary function exception to the FTCA waiver of sovereign

---

[5] Cantrell testifies that ladders attached to prison bunkbeds create safety and security concerns for inmates and staff. Such a device could hinder staff efforts when they must enter the cell to restore order or to reach and assist an inmate in an emergency. The inmate could also "use the ladder as a barrier to shield himself from staff members" inside the cell who are trying to prevent him from harming himself or others, or to restore order. Cantrell Decl. at ¶ 11. Or an inmate might break parts off the ladder to be "used as weapons or escape devices." *Id.* at ¶ 10.

immunity. 28 U.S.C. § 2680(a). Conduct by a federal actor falls within the discretionary function exception if (1) the action or conduct complained of involves an element of judgment or choice; and (2) the conduct or action is based on considerations of public policy. *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). "[W]hether to place ladders in prison cells is discretionary," in consideration of the well-established policy that "prison officials are to be accorded deference in matters better left to their expertise such as security issues." *Severe v. USA*, No. SAG-20-3404, 2021 WL 4521345, at *17 (D. Md. Oct. 1, 2021).

Sinkfield does not dispute Cantrell's evidence that bunk ladders create security concerns, nor does Sinkfield show that security officials have no discretion regarding inmates' bunk assignments.[6] Thus, I agree that to the extent Sinkfield's Complaint may allege official negligence for failing to provide him a bunk ladder, the Motion to Dismiss must be granted under Rule 12(b)(1) and the discretionary function exception. This ruling does not conclude the case, however.

Liberally construed, Sinkfield's Complaint alleges official negligence by the medical staff at USP Lee. Specifically, he asserts that after he reported his mobility issues during his medical intake exam, the medical staff left him housed in unsafe

---

[6] In fact, Sinkfield now denies that he is asserting any FTCA claim regarding the lack of a bunk ladder. Resp.Opp'n 3, ECF No. 15.

conditions by failing to order a medical accommodation for him, such as a bottom bunk pass. Sinkfield also claims that failure to provide him with emergency medical care after his fall on October 21, 2020, is actionable under the FTCA — as medical negligence or malpractice.[7] The United States did not construe Sinkfield's pro se Complaint as raising these medical malpractice claims under the FTCA and filed no response to them. Given the nature of Sinkfield's contentions in the attached portion of his tort claim form, the United States' construction of his FTCA claim was not unwarranted. Accordingly, the medical malpractice claims as described will go forward, and I will allow the United States to file a dispositive motion on these claims.

### III. CONCLUSION.

For the reasons stated in this Opinion, it is **ORDERED** as follows:

1. The Motion to Dismiss, ECF No. 10, is GRANTED in part and DENIED in part. It is granted as to any FTCA claim regarding failure to provide a bunk ladder and as to any *Bivens* claims. It is denied as to any FTCA medical malpractice claims as described herein.

---

[7] I note that Sinkfield's responsive pleading, ECF No. 15, asserts numerous, specific medical treatments or accommodations that the USP medical staff allegedly should have provided to him after his intake screening in August 2019 and after his fall on October 21, 2020. I remind Sinkfield that these allegations are not part of his Complaint merely because he submitted them to the court in his response to the Motion to Dismiss.

2. The United States is DIRECTED to file within 60 days from the entry of this Opinion and Order a dispositive motion regarding any FTCA medical malpractice claims as described herein.

        ENTER: March 3, 2023

        /s/ JAMES P. JONES
        Senior United States District Judge